**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DANNY DONOHUE, as President of the**
**Civil Service Employees Association, Inc.,**
**Local 1000, AFSCME, AFL-CIO; CIVIL**
**SERVICE EMPLOYEES ASSOCIATION,**
**INC., LOCAL 1000, AFSCME, AFL-CIO;**
**WILLIAM COLEMAN, individually and on**
**behalf of all others similarly situated; WILLIAM**
**MILLER, individually and on behalf of all others**
**similarly situated; JOHN METZGIER, individually**
**and on behalf of all others similarly situated; and JACK**
**WIEDEMAN, individually and on behalf of all others**
**similarly situated,**

                                **Plaintiffs,**

                **v.**                                        **1:13-CV-918**
                                                              **(FJS/CFH)**

**THOMAS J. MADISON, JR., in his official capacity**
**as Executive Director of the New York State Thruway**
**Authority and the New York State Canal Corporation;**
**CARLOS MILAN, in his official capacity as Director of**
**Employee Relations and Employee Safety, New York**
**State Thruway Authority and New York State Canal**
**Corporation; BRIAN U. STRATTON, in his official**
**capacity as Director of the New York State Canal**
**Corporation; HOWARD P. MILSTEIN, in his official**
**capacity as Chairman of New York State Thruway/Canal**
**Corporation Board of Directors; E. VIRGIL CONWAY,**
**in his official capacity as Board Member of the New York**
**State Thruway/Canal Corporation Board of Directors;**
**NEW YORK STATE THRUWAY AUTHORITY; NEW**
**YORK STATE CANAL CORPORATION; DONNA J.**
**LUH, in her official capacity as Vice-Chairman of New York**
**State Thruway/Canal Corporation Board of Directors;**
**RICHARD N. SIMBERG, in his official capacity as Board**
**Member of the New York State Thruway/Canal Corporation**

Board of Directors; BRANDON R. SALL, in his official
capacity as Board Member of the New York State Thruway/
Canal Corporation Board of Directors; J. DONALD
RICE, JR., in his official capacity as Board Member of
the New York State Thruway/Canal Corporation Board of
Directors; and JOSE HOLGUIN-VERAS, in his official
capacity as Board Member of the New York State
Thruway/Canal Corporation Board of Directors,

                                        **Defendants.**
_____

DANNY DONOHUE, as President of the
Civil Service Employees Association, Inc.,
Local 1000, AFSCME, AFL-CIO; CIVIL
SERVICE EMPLOYEES ASSOCIATION,
INC., LOCAL 1000, AFSCME, AFL-CIO;
JOHN DELLIO, individually and on behalf of all
others similarly situated; MICHAEL BOULERIS,
individually and on behalf of all others similarly
situated; MAUREEN ALONZO, individually and on
behalf of all others similarly situated; and MARCOS
DIAMANTATOS, individually and on behalf of all others
similarly situated,

                                        **Plaintiffs,**

                    **v.**                                    **1:13-CV-920**
                                                            **(FJS/CFH)**

THOMAS J. MADISON, JR., in his official capacity
as Executive Director of the New York State Thruway
Authority and the New York State Canal Corporation;
CARLOS MILAN, in his official capacity as Director of
Employee Relations and Employee Safety, New York
State Thruway Authority and New York State Canal
Corporation; HOWARD P. MILSTEIN, in his official
capacity as Chairman of New York State Thruway/Canal
Corporation Board of Directors; E. VIRGIL CONWAY,
in his official capacity as Board Member of the New York
State Thruway/Canal Corporation Board of Directors;

**NEW YORK STATE THRUWAY AUTHORITY;
JOSE HOLGUIN-VERAS, in his official capacity as
Board Member of the New York State Thruway/Canal
Corporation Board of Directors; DONNA J. LUH,
in her official capacity as Vice-Chairman New York State
Thruway/Canal Corporation Board of Directors; J. DONALD
RICE, JR., in his official capacity as Board Member of New
York State Thruway/Canal Corporation Board of Directors;
BRANDON R. SALL, in his official capacity as Board
Member of New York State Thruway/Canal Corporation
Board of Directors; and RICHARD N. SIMBERG, in his
official capacity as Board Member of New York State
Thruway/Canal Corporation Board of Directors,**

**Defendants.**

_____

**NEW YORK STATE THRUWAY EMPLOYEES
LOCAL 72, JOSEPH E. COLOMBO, GEORGE E.
SAVOIE; and DAVID M. MAZZEO, individually and on
behalf of all others similarly-situated,**

**Plaintiffs,**

**v.**                                    **1:14-CV-1043
                                          (FJS/CFH)**

**NEW YORK STATE THRUWAY AUTHORITY;
HOWARD P. MILSTEIN, in his official capacity as
Chairman of the New York State Thruway Authority;
THOMAS J. MADISON, JR., in his official capacity
as Executive Director of the New York State Thruway
Authority; THOMAS RYAN, in his official capacity; E.
VIRGIL CONWAY, in his official capacity as Board
Member of the New York State Thruway Authority; JOHN
F. BARR, in his official capacity as Director of Administrative
Services of the New York State Thruway Authority; JOHN
M. BRYAN, in official capacity as Chief Financial Officer
and Treasurer of the New York State Thruway Authority;
DONNA J. LUH, in her official capacity as Vice-Chair of the
New York State Thruway/Canal Corporation Board of Directors;**

**J. DONALD RICE, JR., in his official capacity as Board
Member of the New York State Thruway Authority;
BRANDON R. SALL, in his official capacity as Board
Member of the New York State Thruway Authority;
RICHARD N. SIMBERG, in his official capacity as Board
Member of the New York State Thruway Authority;
and JOSE HOLGUIN-VERAS, in his official capacity as
Board Member of the New York State Thruway Authority,**

                              **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**CIVIL SERVICE EMPLOYEES**              **AARON E. KAPLAN, ESQ.**
**ASSOCIATION, INC.**                    **JENNIFER C. ZEGARELLI, ESQ.**
143 Washington Avenue
P.O. Box 7125, Capitol Station
Albany, New York 12224
Attorneys for Plaintiffs

**LIVINGSTON ADLER PULDA**              **GREGG D. ADLER, ESQ.**
**MEIKLEJOHN & KELLY**                  **NICOLE M. ROTHBERG, ESQ.**
557 Prospect Avenue
Hartford, Connecticut 06105
Attorneys for Plaintiffs

**DREYER, BOYAJIAN LLP**                **BENJAMIN W. HILL, ESQ.**
75 Columbia Street                       **WILLIAM J. DRYER, ESQ.**
Albany, New York 12210
Attorneys for Defendant Madison

**WHITEMAN, OSTERMAN &**               **BETH A. BOURASSA, ESQ.**
**HANNA**                               **CHRISTOPHER W. MEYER, ESQ.**
One Commerce Plaza                       **MONICA R. SKANES, ESQ.**
Suite 1900                               **NORMA G. MEACHAM, ESQ.**
Albany, New York 12260
Attorneys for all Defendants
except Defendants Madison
and Bryan

- 4 -

**E. STEWART JONES HACKLER**        **E. STEWART JONES, JR., ESQ.**
**MURPHY, LLP**                     **THOMAS J. HIGGS, ESQ.**
28 Second Street
Troy, New York 12180
Attorneys for Defendant Bryan

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Pending before the Court is Defendants' motion for reconsideration of the Court's April 14, 2017 Memorandum Decision and Order, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Local Rule 7.1(g), or, alternatively, to amend that Memorandum-Decision and Order to include certification of an issue to the Second Circuit pursuant to 28 U.S.C. § 1292(b). *See* Dkt. No. 144.

## II. DISCUSSION[1]

**A.      Motion for reconsideration**

*1. Standard of review*

Reconsideration "'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *In re Health Mgmt. Sys., Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting *Wendy's Int'l, Inc. v. Nu-Cape Construction, Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996)) (other citations omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that

---

[1] The Court presumes the parties' familiarity with the facts and procedural history of this case.

might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). Generally, there are "'only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Gaston v. Coughlin*, 102 F. Supp. 2d 81, 83 (N.D.N.Y. 2000) (quoting *In re C-TC 9th Ave. P'ship*, 182 B.R. 1, 3 (N.D.N.Y. 1995) (McAvoy, C.J.)).

It is well-settled that a motion for reconsideration "'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple[.]"'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Consequently, a plaintiff "cannot use a motion for reconsideration to advance new facts or arguments and may not submit affidavits or new material." *In re Residential Capital, LLC*, No. 12-12020, 2016 WL 6783316, *3 (Bankr. S.D.N.Y. Nov. 10, 2016) (citations omitted).

### 2. Defendants' grounds for reconsideration

Defendants do not argue that there is new evidence or that there has been an intervening change in the law; rather, Defendants assert that "reconsideration is necessary to remedy at least three clear errors of law." *See* Dkt. No. 144-1 at 9-10. Specifically, those three putative errors are as follows: (1) the Court incorrectly determined that the holding in *Rowland* extended strict scrutiny to all employees who are represented by unions during collective bargaining; (2) the Court failed to require Plaintiffs to establish causation; and (3) the Court incorrectly analyzed Plaintiffs' Fourteenth Amendment Equal Protection claim. *See generally id.*

### *a. The applicability of Rowland—agency shop fee payors*

Defendants first argue that the Court's decision contradicts the express language of *Rowland. See id.* at 10 (citing *State Emp. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126 (2d Cir. 2013)).  In doing so, Defendants strongly emphasize several passages in *Rowland*, in which the court used the term "union membership" but ignore the fact that nothing in *Rowland* expressly held that the targeting theory was limited to layoffs impacting only full-fledged union members.  Rather, as the Court previously explained, "*Rowland* condemns executing targeted layoffs to further economic bargaining because of the likely negative effect on a person's freedom to associate with a union[.]"  *See* Dkt. No. 142 at 17 (citation omitted).

Moreover, the Court did not err in relying on a statement in the *Rowland* defendant's subsequent writ of certiorari.  The Court's use of that statement was simply to add further context to the layoffs in *Rowland* and to clarify the otherwise ambiguous references in *Rowland* to various ways the court described the laid-off employees.  *See State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 133-34 (2d Cir. 2013) (using the terms, "unionized state employees" and "union employees" among others).

Furthermore, as Defendants pointed out, *Rowland* emphasized the qualities of public-sector labor unions that justify their Constitutional protection.  In that regard, the *Rowland* court explained,

> Labor unions *advocate the economic interest of their members*, and historically, unions and their members have also been associated with political advocacy.  Not only do unions engage directly in partisan electoral politics, . . . but labor unions have been predicated on ideas of worker solidarity that are as much political as economic. . . . Opposition to labor unions, similarly, has at times been based not only on the perceived economic interests of employers, consumers, and workers, but on the perception that unions advocate radical political ideas. . . .

*Rowland*, 718 F.3d at 133–34 (internal footnotes omitted).

This passage, however, supports the Court's conclusion that the inclusion of agency shop fee payors in the group of laid-off employees does not impact *Rowland*'s application to this case. For example, in a footnote to that same quoted passage in *Rowland*, the court expressly stated that public-union economic bargaining has heightened political importance because "the wages of public employees bear directly on the overtly political issue of state budgets, including the appropriate levels of public expenditure and taxation, the 'economic' advocacy of public employee unions touches directly on matters of political concern." *Id*. at 134 n.7 (citation omitted). In other words, public-sector union collective bargaining implicates fundamental political and public concerns.

> In the same vein, Defendants assert that the Court's decision
>
> fails to explain how the rationale for *Rowland*'s expansion of the doctrine articulated in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990), to union members – that the unions engage in political activities (*see Rowland*, 718 F.3d at 133-134) – could possibly apply to agency shop fee payors, who, by definition, do not engage in the union's activities, political or otherwise, and in fact have a protected First Amendment right not to be forced to support those activities.

*See* Dkt. No. 144-1 at 13.

However, as stated above, the "political activities" that the *Rowland* court referenced expressly mentioned public-sector economic bargaining. *See Rowland*, 718 F.3d at 134 n.7. Indisputably, public-sector economic bargaining is equally important to all members of the bargaining unit, whether full-fledged members or agency-shop-fee-payors. Indeed, New York Civil Service Law only allows for a deduction in union fees for "expenditures by the organization in aid of activities or causes of a political or ideological nature *only incidentally related to terms and conditions of employment*." N.Y. Civ. Serv. Law § 208(3)(b) (emphasis added). Rather than being incidental to the terms and conditions of employment, the importance of public-employees' salaries are

central to the terms and conditions of employment.  Thus, agency-shop-fee-payors maintain an

interest in public-sector economic bargaining -- a political activity.  *See Rowland*, 718 F.3d at

134 n.7; *see also Wrobel v. Cty. of Erie*, 692 F.3d 22, 28 (2d Cir. 2012) (stating that "[o]nly if an

employee's speech or associational conduct 'touches on a matter of public concern' can a First

Amendment claim proceed" (citations omitted)).

Therefore, the Court denies Defendants' motion for reconsideration insofar as Defendants

argue that the Court erred in concluding that *Rowland*'s framework applies here.


### b. Failure to require Plaintiffs to establish causation

Admittedly, the Court did not specifically mention causation in its analysis; however, that

analysis clearly shows that causation was part of the Court's consideration when determining that

*Rowland* applied.  In that regard, the Court noted the April RIF impacted only those employees

whom Plaintiff Unions represented.  *See* Dkt. No. 142 at 5.  Additionally, the Court stated that

Defendants "'identified positions targeted for layoff under the RIF plan by allocating costs

amongst each of the bargaining units in proportion to the savings that the [Defendants were]

looking to achieve in the unionized workforce.'"  *See id.* at 7 (quoting Dkt. No. 129 at ¶ 146).

Furthermore, the Court concluded that "Defendants' strategy was to leverage the layoffs to

encourage the unions to agree to a new CBA that would require unionized employees to pay a

portion of their health insurance costs."  *See id*. (citing Dkt. No. 120-8 at 5-6).  Moreover, the

Court found that Defendants executed the RIF as planned because Plaintiffs and Defendants

could not agree on a new CBA.  *See id*. (citation omitted).

In other words, the Court's decision on causation rested on the undisputed facts that  (1)

the RIF was planned to impact only unionized state employees; (2) the RIF was executed only

after CBA negotiations had failed; and (3) only unionized employees were considered for the RIF. Therefore, there was ample evidence to establish that union affiliation was a substantial or motivating factor behind the RIF.

Defendants, nevertheless, argue that they executed the RIF not because of the impacted employees' union affiliation but because they had already achieved savings through their M/C employees. Defendants' position insinuates that, to be unconstitutional, an employer's decision to lay off employees must be *solely* motivated by union affiliation. However, the case law Defendants cite in support of their position confirms that, to be unconstitutional, the protected associational right need only be *a substantial or motivating factor* in the employer's decision. *See Thorsen v. Cty. of Nassau*, 294 F. Supp. 2d 371, 378 (E.D.N.Y. 2003) ("substantial or motivating factor"); *Coogan v. Smyers*, 134 F.3d 479, 484 (2d Cir. 1998) (same); *Largo v. Vacco*, 977 F. Supp. 268, 271 (S.D.N.Y. 1997) ("motivating factor").

The causation element was satisfied in this case because Defendants executed a RIF exclusively impacting unionized employees to leverage concessions in collective bargaining. Of course, the Court ultimately concluded that factual issues precluded granting summary judgment. Therefore, Plaintiffs will have to establish causation at trial. Thus, to the extent that Defendants request as much, the Court clarifies that causation is an element of Plaintiffs' prima facie case, and they must prove that their union affiliation was a substantial or motivating factor behind Defendants' decision to execute the RIF to prevail on their First Amendment and Equal Protection claims. However, the Court denies Defendants' motion for reconsideration on the basis that the Court did not require Plaintiffs to establish causation, because, as discussed, Plaintiffs clearly had done so.

### c. Equal Protection claim

Defendants are essentially rearguing the same position they asserted in support of their summary judgment motion. However, as Plaintiffs rightly assert, the critical issue with respect to Plaintiffs' Equal Protection claim was whether Defendants' actions of laying off only unionized employees infringed upon a fundamental right, *i.e.*, Plaintiffs' First Amendment associational rights. Therefore, upon finding that layoffs targeted at unionized employees to leverage collective bargaining infringes upon an individual's fundamental right to associate with a union and collectively advocate for salary demands, the Court was bound to apply the same strict scrutiny analysis applicable to the First Amendment targeting claim.

The cases Defendants cite are inapposite. In that regard, each case concerns treating M/C employees less favorably than unionized employees. Those courts recognized the uncontroversial fact that treating M/C employees less favorably does not infringe on a fundamental right. *See Levine v. Paterson*, No. 1:10-CV-1007, 2011 WL 4593739, *3 (N.D.N.Y. Sept. 30, 2011) (stating that "the amended complaint does not allege the distinction drawn between union and non-union workers in this case disadvantages a suspect class or infringes an [sic] fundamental right"); *Flaherty v. Giambra*, 446 F. Supp. 2d 153, 158 (W.D.N.Y. 2006) (recognizing that the challenged classification in this case was "economic in nature" and thus did not infringe on a fundamental right); *N.Y. City Managerial Emps. Ass'n v. Dinkins*, 807 F. Supp. 958, 964 (S.D.N.Y. 1992) (same); *compare Rowland*, 718 F.3d at 136 (stating that "for a state to fire union members -- and union members alone -- in the hope of ultimately achieving economic concessions is little different from refusing to hire union members in the first place"). This case is different because, as explained above and decided in *Rowland*, Plaintiffs had a

fundamental right to associate with the union: a right premised on the deeply political issues of economic bargaining in the public sector.

Therefore, the Court denies Defendants' motion insofar as they argue that the Court was bound to apply a rational basis review to Plaintiffs' Equal Protection claims.[2]

**B.      Motion to certify the Court's April 14, 2017 Memorandum-Decision and Order for an interlocutory appeal to the Second Circuit**

Pursuant to 28 U.S.C. § 1292(b), a court may certify an order for interlocutory review when (1) "such order involves a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3) where] an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).  "[T]the certification decision is entirely a matter of discretion for the district court[.]"  *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 36 (2d Cir. 2014).

With respect to the first factor, "[a]lthough the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' . . . it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action. . . ."  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (internal citations omitted).  In this case, Defendants have identified the following question that they want the Second Circuit to consider, namely, "[u]nder *Rowland*,

---

[2] The case law that holds that "collective bargaining is not a fundamental right" and that a union and its members "are not suspect classes" deals with different considerations than the case at bar. *Sweeney v. Pence*, 767 F.3d 654, 669 (7th Cir. 2014).  *Sweeney* dealt with a state's right-to-work law.  Thus the aspects of union membership and collective bargaining at issue in *Sweeney* were significantly different than what is at stake in this case and what was at stake in *Rowland*, i.e., public-sector collective bargaining.

are 'union-represented individuals during the bargaining process' – consisting of both union members and agency fee shop payors – a protected class, such that employment decisions based on employees' union representation during collective bargaining are subject to strict scrutiny?" *See* Dkt. No. 144-1 at 21.  The resolution of this question involves a purely legal determination that turns on the interpretation of *Rowland*.  The result of the appeal will either confirm the Court's decision, thus allowing the case to proceed to class certification or it will reverse this Court's decision and remand the case to consider whether the layoffs could be justified under a rational basis review.  In the event that the Second Circuit disagrees with the Court's analysis, it is highly likely that Defendants' decision to terminate unionized employees would pass rational basis review.  In that regard, as the Court previously recognized, Defendants had already achieved savings from M/C employees and Defendants designed the layoffs to impact the most expensive unionized employees.  Therefore, the Court finds that the resolution of this issue involves a controlling issue of law.

To establish the second factor, the defendant must show that "'the issue is difficult and of first impression and involves more than just a strong disagreement among the parties.'"  *Iridium Operating LLC v. Motorola, Inc.*, Nos. 99-45005 CB, 01-02952, M 47 WHP, 2003 WL 21507196, *1 (S.D.N.Y. June 30, 2003) (quotation and other citation omitted).  Plaintiffs generally argue that this Court's decision is merely a straightforward reading of *Rowland*.  However, as the Court previously noted in its decision, "[a]lthough it is true that there is nothing in the Second Circuit's decision that indicates 'that any agency shop fee payors were included in the group of "unionized state employees" who were fired,' . . . there is equally nothing to indicate that they were not."  *See* Dkt. No. 142 at 16 (quoting Dkt. No. 128 at 7).  Axiomatically, the facts in this case are different than those in *Rowland*.  Although the Court is convinced that it reached

the correct conclusion, *i.e.*, that the inclusion of agency-shop-fee-payors does not nullify *Rowland*'s applicability, it is an issue of first impression, the resolution of which will significantly clarify the rights and responsibilities of public employee unions and their employers during collective bargaining. Therefore, the Court finds that there are substantial grounds for disagreement regarding the outcome of this case.

Finally, "'[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time for trial or to shorten the time required for trial."'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 531 (S.D.N.Y. 2014) (quotation omitted); *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996) (stating that "[t]he use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation" (citation omitted)). This case has already involved protracted litigation and will continue to do so as Plaintiffs' motion for class certification remains pending. The Second Circuit's conclusive resolution of the issues the Court resolved in its decision on summary judgment could have two important results: (1) it will confirm the Court's order and provide guidance for how Plaintiffs should define their proposed classes or (2) it will remand the case to this Court to consider the April RIF under a rational basis review, which, as noted above, would likely result in the dismissal of Plaintiffs' claims. In either instance, guidance from the Second Circuit will certainly help to shorten this litigation.

In sum, despite the Court's confidence that it reached the correct decision in its April 14, 2017 Memorandum-Decision and Order, it grants Defendants' motion to certify the Court's April 14, 2017 Memorandum-Decision and Order for an interlocutory appeal to the Second Circuit Court of Appeals.

# IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for reconsideration, *see* Dkt. No. 144, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to certify the Court's April 14, 2017 Memorandum-Decision and Order for an interlocutory appeal to the Second Circuit Court of Appeals, *see id.*, is **GRANTED**.  In that regard, the Court hereby states that the Court's April 14, 2017 Memorandum-Decision and Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from" the Court's April 14, 2017 Memorandum-Decision and Order "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), to wit, "Under Rowland, are 'union-represented individuals during the bargaining process' – consisting of both union members and agency shop payors – a protected class, such that employment decisions based on employees' union representation during collective bargaining are subject to strict scrutiny?"  The Court notes that it is within the Second Circuit's discretion to "permit an appeal to be taken from" the Court's April 14, 2017 Memorandum-Decision and Order "if application is made to it **within ten days** after the entry of [this Memorandum-Decision and Order]." *Id.* (emphasis added); and the Court further

**ORDERS** that Magistrate Judge Hummel shall continue to consider Plaintiffs' motion for class certification during the pendency of Defendants' application to the Second Circuit for an interlocutory appeal or until such time as the Second Circuit orders a stay of the proceedings herein.

**IT IS SO ORDERED.**

Dated: July 27, 2017
  Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge