**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**DANNY DONOHUE, as President of the
Civil Service Employees Association, Inc.,
Local 1000, AFSCME, AFL-CIO; CIVIL
SERVICE EMPLOYEES ASSOCIATION,
INC., LOCAL 1000, AFSCME, AFL-CIO;
WILLIAM COLEMAN, individually and on
behalf of all others similarly situated; WILLIAM
MILLER, individually and on behalf of all
others similarly situated; JOHN METZGIER,
individually and on behalf of all others similarly
situated; and JACK WIEDEMAN, individually
and on behalf of all others similarly situated,**

                              **Plaintiffs,**

                v.                                                    **1:13-CV-918**
                                                                      **(FJS/CFH)**
                                                                      **(Lead Case)**

**THOMAS J. MADISON, JR., in his official capacity
as Executive Director of the New York State Thruway
Authority and the New York State Canal Corporation;
CARLOS MILLAN, in his official capacity as Director
of Employee Relations and Employee Safety, New York
State Thruway Authority and New York State Canal
Corporation; BRIAN U. STRATTON, in his official capacity
as Director of the New York State Canal Corporation;
HOWARD P. MILSTEIN, in his official capacity as Chairman
of New York State Thruway/Canal Corporation Board of
Directors; E. VIRGIL CONWAY, in his official capacity as
Board Member of the New York State Thruway/Canal
Corporation Board of Directors; NEW YORK STATE
THRUWAY AUTHORITY; NEW YORK STATE CANAL
CORPORATION; DONNA J. LUH, in her official capacity
as Vice-Chairman of New York State Thruway/Canal
 Corporation Board of Directors; RICHARD N. SIMBERG,
in his official capacity as Board Member of the New York State
Thruway/Canal Corporation Board of Directors; BRANDON
R. SALL, in his official capacity as Board Member of the New
York State Thruway/Canal Corporation Board of Directors; J.
DONALD RICE, JR., in his official capacity as Board Member of
the New York State Thruway/Canal Corporation Board of
Directors; and JOSE HOLGUIN-VERAS, in his official capacity**

**as Board Member of the New York State Thruway/Canal Corporation Board of Directors,**

       **Defendants.**

---

**DANNY DONOHUE, as President of the Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO; CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO; JOHN DELLIO, individually and on behalf of all others similarly situated; MICHAEL BOULERIS, individually and on behalf of all others similarly situated; MAUREEN ALONZO, individually and on behalf of all others similarly situated; and MARCOS DIAMANTATOS, individually and on behalf of all others similarly situated,**

       **Plaintiffs,**

  **v.**                        **1:13-CV-920 (FJS/CFH)**

**THOMAS J. MADISON, JR., individually and in his official capacity as Executive Director of the New York State Thruway Authority and the New York State Canal Corporation; CARLOS MILLAN, in his official capacity as Director of Employee Relations and Employee Safety, New York State Thruway Authority and New York State Canal Corporation; HOWARD P. MILSTEIN, individually and in his official capacity as Chairman of New York State Thruway/Canal Corporation Board of Directors; E. VIRGIL CONWAY, in his official capacity as Board Member of the New York State Thruway/Canal Corporation Board of Directors; NEW YORK STATE THRUWAY AUTHORITY; DONNA J. LUH, in her official capacity as Vice-Chairman of New York State Thruway/ Canal Corporation Board of Directors; RICHARD N. SIMBERG, in his official capacity as Board Member of the New York State Thruway/Canal Corporation Board of Directors; BRANDON R. SALL, in his official capacity as Board Member of the New York State Thruway/Canal Corporation Board of Directors; J. DONALD RICE, JR., in his official capacity as Board Member of the New York State Thruway/Canal Corporation Board of Directors; and JOSE**

- 2 -

**HOLGUIN-VERAS, in his official capacity as Board Member of the New York State Thruway/Canal Corporation Board of Directors,**

                **Defendants.**

---

**NEW YORK STATE THRUWAY EMPLOYEES LOCAL 72; JOSEPH E. COLOMBO; GEORGE E. SAVOIE; and DAVID M. MAZZEO, individually and on behalf of all others similarly situated,**

                **Plaintiffs,**

     v.                                                                                                   **1:14-CV-1043 (FJS/CFH)**

**NEW YORK STATE THRUWAY AUTHORITY; HOWARD P. MILSTEIN, individually and in his official capacity as Chairman of the New York State Thruway Authority; THOMAS J. MADISON, JR., individually and in his official capacity as Executive Director of the New York State Thruway Authority; THOMAS RYAN, in his official capacity; E. VIRGIL CONWAY, in his official capacity as Board Member of the New York State Thruway Authority; JOHN F. BARR, in his official capacity as Director of Administrative Services of the New York State Thruway Authority; JOHN M. BRYAN, in his official capacity as Chief Financial Officer and Treasurer of the New York State Thruway Authority; DONNA J. LUH, in her official capacity as Vice-Chair of the New York State Thruway Authority Board of Directors; J. DONALD RICE, JR., in his official capacity as Board Member of the New York State Thruway Authority; BRANDON R. SALL, in his official capacity as Board Member of the New York State Thruway Authority; RICHARD N. SIMBERG, in his official capacity as Board Member of the New York State Thruway Authority; and JOSE HOLGUIN-VERAS, in his official capacity as Board Member of the New York State Thruway Authority,**

                **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **CIVIL SERVICES EMPLOYEES ASSOCIATION, INC.**<br>143 Washington Avenue<br>P.O. Box 7125, Capitol Station<br>Albany, New York 12224<br>Attorneys for Plaintiffs Danny Donohue, Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, William Coleman, William Miller, John Metzgier, Jack Wiedeman, John Dellio, Michael Bouleris, Maureen Alonzo, and Marcos Diamantatos | **AARON E. KAPLAN, ESQ.**<br>**JENNIFER C. ZEGARELLI, ESQ.** |
| **LIVINGSTON ADLER PULDA MEIKLEJOHN & KELLY**<br>557 Prospect Avenue<br>Hartford, Connecticut 06205<br>Attorneys for Plaintiffs Danny Donohue, Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, William Coleman, William Miller, John Metzgier, Jack Wiedeman, New York State Thruway Employees Local 72, Joseph E. Colombo, George E. Savoie, and David M. Mazzeo | **NICOLE M. ROTHGEB, ESQ.**<br>**GREGG D. ADLER, ESQ.** |
| **WHITEMAN, OSTERMAN & HANNA LLP**<br>One Commerce Plaza<br>Suite 1900<br>Albany, New York 12260<br>Attorneys for Defendants Carlos Millan, Brian U. Stratton, E. Virgil Conway, Richard N. Simberg, New York State Thruway Authority, New York State Canal Corporation, Donna J. Luh, Brandon R. Sall, J. Donald Rice, Jr., Jose Holguin-Veras, Howard P. Milstein, Thomas J. Madison, Jr., Thomas Ryan, and John F. Barr | **BETH A. BOURASSA, ESQ.**<br>**CHRISTOPHER W. MEYER, ESQ.**<br>**MONICA R. SKANES, ESQ.**<br>**NORMA G. MEACHAM, ESQ.** |

| | |
|---|---|
| **CAPEZZA HILL, LLP**<br>30 South Pearl Street<br>Suite P-110<br>Albany, New York 12207<br>Attorneys for Defendant Thomas J.<br>Madison, Jr. | **BENJAMIN W. HILL, ESQ.** |
| **DREYER BOYAJIAN LLP**<br>75 Columbia Street<br>Albany, New York 12210<br>Attorneys for Defendant Thomas J.<br>Madison, Jr. | **WILLIAM J. DREYER, ESQ.** |
| **E. STEWART JONES HACKER MURPHY, LLP**<br>28 Second Street<br>Troy, New York 12180<br>Attorneys for Defendant John M. Bryan | **E. STEWART JONES, JR., ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendants' motion for partial summary judgment requesting that the Court dismiss Plaintiffs' Equal Protection claim, *see* Dkt. No. 162, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] As discussed below, Defendants filed this motion in response to a Mandate from the Second Circuit. *See* Dkt. No. 154.[2]

---

[1] All citations referencing docket numbers correspond with the docket in the lead case, 1:13-CV-918, unless otherwise noted.

[2] In a Memorandum-Decision and Order dated April 14, 2017, the Court granted Defendants' prior summary judgment motion with respect to Plaintiffs' First Amendment retaliation claim and denied that motion with respect to Plaintiffs' First Amendment targeting claim. *See* Dkt. No. 142.

## II. BACKGROUND AND PROCEDURAL HISTORY[3]

Plaintiffs in these consolidated actions were all union-represented employees of the New York State Thruway Authority and New York State Canal Corporation (collectively referred to as "Defendants") whose positions were eliminated in April of 2013 when Defendants instituted a reduction in force ("RIF") in the face of significant financial pressure and an increased debt burden. *See generally* Dkt. No. 1, Class Compl., at ¶¶ 5-37, 48-54; *see also* Dkt. No. 162-2, Defs' Stmt. of Facts, at ¶¶ 57-62. Defendants implemented several cost-saving measures prior to eliminating Plaintiffs' positions, including withholding a series of salary increases for managerial/confidential ("M/C") employees who were not affiliated with Plaintiffs' unions. *See* Dkt. No. 162-2 at ¶¶ 63-67.[4] Defendants estimated that those steps saved them approximately $6.4 million; but, despite those savings, Defendants determined that they needed to reduce labor costs further. *See id.* at ¶ 74.[5]

Because salaries and benefits made up approximately 95% of Defendants' operating budget, Defendants sought concessions from unionized workers when their collective bargaining agreements ("CBAs") expired in June of 2012. *See id.* at ¶¶ 112, 117, 157. Defendants' apparent strategy was to leverage the layoffs to encourage Plaintiffs' unions to

---

[3] The Court relies on the facts as set forth in Defendants' Statement of Facts, *see* Dkt. No. 162-2; but it includes footnotes where necessary to further provide Plaintiffs' position as expressed in Plaintiffs' Response to Defendants' Statement of Facts, *see* Dkt. No. 171. The Court finds that none of the material facts cited in this section are in dispute.

[4] Plaintiffs note that Defendants can unilaterally change the M/C employees' salaries and benefits at any time; and, thus, Plaintiffs assert that the M/C employees were not entitled to raises. Notwithstanding this, Plaintiffs acknowledge that the M/C employees did not receive those payments. *See* Dkt. No. 171 at ¶¶ 63-67.

[5] Plaintiffs argue that this is not a "savings" because Defendants did not have the obligation to spend that money on M/C employee salary increases or benefits, but they do not dispute the $6.4 million figure. *See* Dkt. No. 171 at ¶ 74.

agree to a new CBA that would require unionized employees to pay a greater portion of their health insurance costs.  *See id.* at ¶¶ 129; 142, 149.  Plaintiffs and Defendants could not agree on a new CBA; and, thus, Defendants executed the RIF as planned.  *See generally id.* at ¶¶ 159-167, 172-73.

None of the M/C employees' positions were eliminated as part of the RIF.  *See id.* at ¶ 192.[6]  According to Plaintiffs, Defendants determined the number of positions to lay off under the RIF plan by "apportioning the amount of savings desired … amongst the four bargaining units based upon the number of full-time employees in each bargaining unit.  The amount of savings sought from a bargaining unit was then divided by the value of the average salary plus fringe benefit[s] of a bargaining unit member."  *See* Dkt. No. 171, Pls' Response to Defs' Stmt. of Facts, at ¶ 175.  The department heads were then directed to identify which positions to eliminate from their respective departments.  *See id.* at ¶ 176.  In some instances, after full-time positions were abolished, seasonal or part-time employees carried out the work at a reduced cost; and some union member Plaintiffs were re-hired as seasonal or part-time employees to retain their union membership status.  *See* Dkt. No. 162-2 at ¶ 177.  In total, the RIF saved Defendants at least $9 million in 2013.  *See id.* at ¶ 196.

Following the RIF, Plaintiff Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO filed two actions against Defendants and a number of executives and board members in their individual and official capacities for violations of state-law and the First Amendment, Equal Protection Clause, Due Process Clause, and the Contract Clause of the United States Constitution.  *See generally* Dkt. No. 1; *see also* No. 1:13-CV-920, Dkt. No. 1.

---

[6] Plaintiffs dispute the reason why the M/C positions were not eliminated but concede that "[n]o M/C positions were eliminated in the RIF…"  *See* Dkt. No. 171 at ¶ 192.

Almost a year later, Plaintiff New York State Thruway Employees Local 72 filed an action against Defendant Thruway Authority and a number of the same executives in their individual and official capacities. *See* No. 1:14-CV-1043, Dkt. No. 2. Plaintiffs represented members of each of the collective bargaining units and agency-fee payors ("AFPs"), who are individuals who occupy positions in the bargaining units but are not union members.[7] The Court consolidated these three actions on October 2, 2014. *See* Dkt. No. 45.

Defendants then filed a motion for summary judgment, and Plaintiffs cross-moved for summary judgment in part. *See* Dkt. Nos. 114, 116, 120. Plaintiffs chose not to pursue their Due Process, Contract Clause, and state-law claims, so the Court dismissed those claims in April of 2017. *See* Dkt. No. 142 at 23 ("April 2017 Order") (citing Dkt. No. 132-6 at 8 n.1). Thus, the Court only examined Plaintiffs' First Amendment and Equal Protection claims, which it found were "duplicative," and analyzed the claims together. *See id.* at 9 n.5. In its April 2017 Order, the Court granted Defendants' motion for summary judgment with respect to Plaintiffs' First Amendment retaliation claim and denied it with respect to Plaintiffs' First Amendment targeting claim. *See id.* at 23. The Court also referred Plaintiffs' joint motion for class certification, *see* Dkt. No. 97, to Magistrate Judge Hummel, in front of whom that motion— corrected, renewed, and amended— *see* Dkt. No. 165, is still pending.

In response to the Court's April 2017 Order, Defendants moved for reconsideration, or, in the alternative, to certify an issue to the Second Circuit pursuant to 28 U.S.C. § 1292(b). *See* Dkt. No. 144. The Court denied Defendants' motion but certified to the Second Circuit the

---

[7] Defendants argue that AFPs affirmatively decided not to join the union, whereas Plaintiffs contend that they have not filled out a membership card for the union. Under either view, however, the parties agree that AFPs are not union members. *See* Dkt. No. 171-1, Pls' Memorandum in Opposition, at ¶ 24.

following question: "Under [*State Emp. Bargaining Agent Coalition v. Rowland,*[8]] are 'union-represented individuals during the bargaining process' – consisting of both union members and agency shop payors – a protected class, such that employment decisions based on employees' union representation during collective bargaining are subject to strict scrutiny?" *See* Dkt. No. 152 (quotation omitted).

The Second Circuit granted Defendants' motion for leave to appeal an interlocutory order and to stay the district court proceedings pending the appeal. *See* Dkt. No. 154. On November 18, 2019, the Second Circuit issued a Mandate, in which it held, "AFPs do not have a First Amendment right to freedom of association merely because they are represented by a union during collective bargaining." *See* Dkt. No. 156, Mandate, at 16 (footnote omitted). Notably, the parties stipulated to dismissing the AFPs' claims after the Second Circuit issued this decision. *See* Dkt. No. 163. Thus, the only remaining Plaintiffs are Defendants' employees who were union members at the time of the RIF.

With respect to the union member Plaintiffs' First Amendment claims, the Second Circuit held, "[i]f [Defendants] terminated the union members because of their union membership—a factual question the District Court decided to let a jury determine—then strict scrutiny applies to its employment decision. We therefore affirm the District Court's decision as it applies to those Plaintiffs who are union members." *See* Dkt. No. 156 at 17. However, the Second Circuit noted that the Court analyzed Plaintiffs' First Amendment targeting claim together with their Equal Protection claim because it viewed them as "rais[ing] identical issues." *See id.* at 13 n.2 (citing Dkt. No. 142 at 9). The Second Circuit remarked that the Court's holding relied entirely on its interpretation of *Rowland*; and, since the Second Circuit

---

[8] 718 F.3d 126 (2d Cir. 2013).

found that, under *Rowland*, employees do not enjoy First Amendment protections merely because they are *represented* by a union during collective bargaining, it did not address whether Plaintiffs' termination violated the Equal Protection Clause.  *See id.*  Thus, the Second Circuit directed the Court to "revisit the Plaintiffs' Equal Protection claim" on remand in light of the findings in the Mandate.  *See id.*

Therefore, pending before the Court is Defendants' motion for partial summary judgment requesting that the Court dismiss Plaintiffs' Equal Protection claim, which is based on the theory of selective treatment.  *See* Dkt. No. 162.

## III. DISCUSSION[9]

To prevail on an Equal Protection claim based on the theory of selective treatment, "a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992))).  An Equal Protection claim based on the theory of selective treatment is often referred to as a *LeClair* type claim, having first been articulated in the Second Circuit in *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).  *See id.*

In *Hu,* the Second Circuit recognized that "'[t]here is no precise formula to determine whether an individual is similarly situated to comparators.'"  *Id.* at 97 (quotation and other

---

[9] The Court assumes the parties' familiarity with the relevant standard of review for a motion for summary judgment and will not repeat that standard here.

citation omitted). "[T]he question of 'whether parties are similarly situated is [generally] a fact-intensive inquiry' that depends heavily on the particular context of the case at hand." *Id.* (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (other citations omitted). In the Title VII context, which is analogous to Plaintiffs' Equal Protection claim here, courts have held that employees may be similarly situated in "all material respects" when "the plaintiff and the putative comparator 'were subject to the same workplace standards.'" *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4467 (MKB), 2015 WL 5692860, *11 (E.D.N.Y. Sept. 28, 2015) (quoting [*Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)]); (citing *Ruiz* [*v. Cnty. of Rockland*], 609 F.3d [486,] 493-94 [(2d Cir. 2010)] ("An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" (quoting *Graham* [*v. Long Island R.R.*], 230 F.3d [34,] 40 [(2d Cir. 2000)])).

Here, Plaintiffs assert a *LeClair* type selective enforcement Equal Protection claim against Defendants, arguing that they were treated differently from the similarly situated non-union M/C employees because they exercised their constitutionally protected right to assemble as a union and were laid off for doing so. *See generally* Dkt. No. 171-1, Pls' Memorandum in Opposition, at 17-23. Specifically, Plaintiffs contend that they were similarly situated to the M/C employees because "[m]any M/C employees were in the same job titles as Plaintiff union members employees, received similar pay, and benefits, including health insurance, and the same retirement pension." *See id.* at 19. Thus, Plaintiffs assert, there is no cognizable difference between the M/C employees and Plaintiffs in union positions who were laid off; and, at the very least, Plaintiffs argue that there is an issue of material fact as to whether the union

member Plaintiffs are similarly situated to the M/C employees who were spared the effects of the RIF. *See id.*

Defendants contend that the Court should not even reach the second element of the claim—whether Plaintiffs were selectively treated *because of* their union membership—since they cannot satisfy either of the prongs of the first element, *i.e.*, that they were similarly situated to non-union members and that they were treated differently from those non-union employees. *See generally* Dkt. No. 162-3, Defs' Memorandum in Support. at 13-20. Defendants assert that, "because of the entirely distinct laws and rules controlling an employer's determinations concerning terms of employment for union members, union members are never similarly situated to non-member employees." *See id.* at 15 (citing *Donnell v. Lee Cnty. Port Authority*, 509 F. App'x 903 (11th Cir. 2013) (summary order); *Sacramento Cnty. Retired Empls. Ass'n v. Cnty. of Sacramento*, 975 F. Supp. 2d 1150 (E.D. Cal. 2013); *Johnson v. Pepsi Cola Gen. Bottlers, Inc.*, No. 04-C-325, 2005 WL 1629895, *7 (E.D. Wis. July 6, 2005)). Furthermore, Defendants argue that Plaintiffs and the non-union member M/Cs are not similarly situated in the following two respects: (1) they have profoundly different legal positions*, i.e.*, the substantial legal restrictions placed on Defendants' dealings with union member Plaintiffs, which do not apply to all M/Cs; and (2) there are material factual differences, such as that the M/Cs had already contributed to Defendants' cost savings while Plaintiffs had not contributed any costs savings, as a result of their differing legal protections that they enjoyed by statute and under the CBAs. *See* Dkt. No. 177, Defs' Reply, at 7.

Defendants correctly note that Plaintiffs do not point to any facts to support their primary contention that they had the same job titles as M/C employees, received similar pay and benefits, or that they had the same retirement pension. *See id.* at 7 n.1; *see also* Dkt. No. 171-1

- 12 -

at 19. After reviewing the evidence in this case, the Court finds that Plaintiffs and the M/C employees are similarly situated *only* in that both groups of employees collect New York State retirement benefits and pensions as set out in state law. *See* Dkt. No. 171 at ¶¶ 33-34. In addition, both groups of employees receive health insurance under the same plan; but, with the exception of workers hired prior to 2005, the workers were responsible to pay different amounts for those benefits. *See id.* at ¶¶ 37-48.[10]  Union member Plaintiffs paid only 10% of their medical costs, whereas M/C employees paid 20%. *See id.*  Notably, these benefits and the employees' salaries were determined by different mechanisms.

Collective bargaining units represented the union member Plaintiffs; and, thus, Defendants could not alter their salary or benefits at-will and had to wait until the next appropriate time to negotiate changes with the union representatives. *See id.* at ¶¶ 9-23; *see also* N.Y. Civ. Serv. L. § 209-a(1)(e). The M/C employees, who make up 6% of Defendant

---

[10] Plaintiffs "deny" some of these facts as written in Defendants' Statement of Facts and reword them, but they do not substantively change the facts or statistics in their Response. *See* Dkt. No. 171 at ¶¶ 40, 42, 44, 46. Plaintiffs also occasionally dispute dates that do not materially change the facts or circumstances. For example, with respect to this contention, paragraph 40 in Defendants' Statement of Facts provides the following:

> "40.   Only those eligible Teamsters bargaining unit employees who were hired on or after October 20, 2005 contribute 10% of the Empire Plan individual premium and 25% of the Empire Plan family premium. Barr Aff. ¶ 35(a) & Ex. B, Teamsters Agreement § 10.A, pp. 22-23; Latko Dep. Tr. 61-62, 238-239."

Plaintiffs responded with the following:

> "Deny. Teamsters bargaining unit employees hired on or after October 21, 2005, contribute to health insurance premiums at the rates of 10% for individual coverage and 25% of the additional cost for family coverage. Zegarelli Dec., Exh. 11 (Steele Dep.) p. 21; Exh. 16 (NYS Thruway Authority Pre-Implementation Audit of Revised 2013 Health Insurance Rates, dated Dec. 13, 2012)."

*See* Dkt. No. 171 at ¶ 40 (footnote omitted).

Thruway Authority's total employees, could not be part of a collective bargaining unit due to the nature of their positions. *See* Dkt. No. 171 at ¶ 29; *see also* N.Y. Civ. Serv. L. § 214. Thus, Defendants could set the M/C employees' salaries and benefits and could unilaterally change them whenever they wanted. *See* Dkt. No. 171 at ¶ 30; *see also McRae v. New York State Thruway Auth.*, 687 F. App'x 22, 24 (2d Cir. 2017) (summary order).

The evidence in the record shows no correlation between Plaintiffs' and the M/C employees' salaries. For example, the parties agree that, by 2012, some M/C supervisors were earning less than some of their subordinates who were bargaining unit members. *See* Dkt. No. 171 at ¶ 71. Plaintiffs assert that there is no evidence explaining the differences in salaries, and that greater tenure or special skills and responsibilities may be the reason for these pay disparities. *See id.* Further, Plaintiffs note that in 2013 the average salaries of M/C employees were greater than the average salaries of those in the four union bargaining units. *See id.*

The primary comparable difference in Plaintiffs' and the M/C employees' salaries is how often they were subject to increases, as well as other additional payments. From 2008 through 2012, Defendants unilaterally withheld salary increases, step increases, and longevity payments from M/C employees. *See id.* at ¶¶ 63-67.[11] For example, Defendants deferred and withheld the M/C employees' 3% salary increase in 2009 and 2010, their 4% salary increase in 2011, and step increases and longevity payments in 2012. *See id.* Meanwhile, because of the CBAs and the Civil Service Law, Defendants could not change Plaintiffs' salaries or benefits

---

[11] Plaintiffs dispute that Defendants had actually scheduled to give the M/C employees salary increases, step increases, or longevity payments or that they were otherwise entitled to those payments because Defendants can unilaterally change the M/C employees' salaries and benefits at any time. Notwithstanding this, Plaintiffs acknowledge that the M/C employees did not receive those payments. *See* Dkt. No. 171 at ¶¶ 63-67.

and each of those members received their salary increases, step increases, and longevity payments as promised for those years. *See id.* at ¶¶ 69-70. Thus, there is no evidence that Plaintiffs and the M/C employees received the same salaries or that they received the same annual increases and other payments.

Finally, there is also no evidence in the record that the M/C employees had the same job titles or duties as the union member Plaintiffs or that they were subject to the same workplace standards despite Plaintiffs many statements to the contrary. *See generally id.* Accordingly, the Court concludes that, when relying on the available evidence, no reasonable factfinder could find that Plaintiffs and the M/C employees were "similarly situated" in "all material respects." Thus, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' Equal Protection claim.[12]

---

[12] Because the Court finds that Plaintiffs have failed to prove the first prong of their Equal Protection claim, *i.e.*, that they were similarly situated to the non-union member M/C employees, the Court does not reach the merits of the parties' arguments with respect to the second prong of the Equal Protection analysis, *i.e.*, whether Defendants discriminated against Plaintiffs because of their union membership and which level of scrutiny—strict or rational basis review—applies. Relatedly, since the Court finds that Plaintiffs were not similarly situated to the M/C employees, the Court does not reach the merits of the issue of whether Plaintiffs' Equal Protection claim coalesces with their already-dismissed First Amendment retaliation claim.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for partial summary judgment, *see* Dkt. No. 162, is **GRANTED**[13]

**IT IS SO ORDERED.**

Dated: July 31, 2020
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[13] The Court will set a trial date for this matter with regard to the remaining claim, *i.e.*, Plaintiffs' First Amendment targeting claim, after the pending motion for class certification is resolved.